**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>)<br>    Plaintiff,  )<br>)<br>v.  )<br>)<br>DAKOTA DOUGLAS HIMES,  )<br>)<br>    Defendant.  )<br>)<br>) | NO. 5:23-MJ-05238-MAS |

**DETENTION OPINION & ORDER**

The criminal Complaint alleges that Defendant Dakota Douglas Himes ("Himes") attempted to produce visual depictions involving a minor engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2251(a) and 2252(e); received visual depictions involving a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2); and possessed visual depictions involving a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). [DE 1]. The United States properly moved for Himes' detention under 18 U.S.C. § 3142(f)(1)(A), (E). [DE 5]. After considering the record—including testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Himes pending trial.

1

I.    **FACTUAL & PROCEDURAL BACKGROUND**

According to the Affidavit in Support of the Criminal Complaint ("Affidavit"), the Federal Bureau of Investigations ("FBI") in Philadelphia, Pennsylvania began investigating activity on the social media application Kik in February 2019 after receiving information from the Washington Metropolitan Police Department ("WMPD"). [DE 1-1, PageID# 4–5, ¶¶ 6–7 (Affidavit)]. WMPD shared that a Kik user with the username "joeresso," later identified as Joe Resso, was a member of a Kik group called "#parenttabuu" (or "parent tabuu") and posted photos of his son in that group. [DE 1-1, PageID# 5, ¶ 7]. A WMPD undercover officer ("UC") messaged joeresso privately, and joeresso sent the UC child sexual abuse material ("CSAM") directly. This interaction led to law enforcement obtaining a search warrant for electronic content stored by Kik for the joeresso account. [DE 1-1, PageID# 5, ¶ 8]. In the return, the FBI found that joeresso communicated with another Kik user with the username "imjustdakota." [DE 1-1, PageID# 5, ¶ 8].

Kik user joeresso and imjustdakota communicated privately between February 23, 2019, and February 27, 2019. [DE 1-1, PageID# 5, ¶ 9]. In their private messages, imjustdakota asked joeresso to share photos of his infant son. After some back in forth, joeresso messaged imjustdakota that he does not save "those kinds of vids" and that he "only send[s] live nudes" because he "do[esn't] like to save them." [DE 1-1, PageID# 8, ¶ 9]. On February 27, 2019, joeresso sent imjustdakota two images displaying his genitalia with a toddler in the background. [DE 1-1, PageID# 8, ¶ 9]. Later in the messages, imjustdakota solicited nude pictures of the toddler, specifically

asking to see the toddler "live." [DE 1-1, PageID# 10, ¶ 9]. In response, joeresso sent a nude image exposing the toddler's genitalia. [DE 1-1, PageID# 10, ¶ 9].

During the Kik conversation, joeresso solicited images of imjustdakota's children. [DE 1-1, PageID# 12, ¶ 9]. Imjustdakota informed joeresso that he did not have children of his own but does "get a chance to be alone with kids occasionally." [DE 1-1, PageID# 13, ¶ 9]. He went on to indicate that he had "play[ed]"[1] with his friends' children that were between ages 3 and 7. [DE 1-1, PageID# 13, ¶ 9]. Imjustdakota assured joeresso that he would "show [joeresso] pics [of the kids] next chance [he] get[s]." [DE 1-1, PageID# 13, ¶ 9].

In July 2019, the FBI subpoenaed Kik for subscriber information associated with the imjustdakota account. [DE 1-1, PageID# 15–16, ¶ 10]. The records showed that imjustdakota was associated with the email account himesdakota@yahoo.com, and that an IP address of 24.95.129.11 was last used to log in to the account on June 24, 2019. [DE 1-1, PageID# 15–16, ¶ 10]. The FBI subpoenaed Charter Communications, the owner of the IP address, for the associated subscriber information. [DE 1-1, PageID# 16, ¶ 11]. Charter Communications' response showed "Dakota Himes" as the paid subscriber and disclosed the email address dakotahimes2@mymail.eku as the email address associated with the account. [DE 1-1, PageID# 16, ¶ 12]. The address on the account was a Berea, Kentucky address. [*Id.*].

---

[1] TFO Williams testified that "play" is typically a euphemism among individuals who share CSAM, which indicates either the creation of CSAM or discussions about child sex abuse activity.

**3**

The FBI forwarded the investigative lead to FBI Louisville, including all the evidence pertaining to the communications between imjustdakota and joeresso. [DE 1-1, PageID# 16, ¶ 13]. Task Force Officer Stanley Williams, Jr. ("TFO Williams") opened an investigation after reviewing the evidence and gathered additional data, including Himes' current address in Lexington, Kentucky. [DE 1-1, PageID# 16, ¶ 14]. TFO sought and obtained a search warrant for Himes' residence, including electronic devices, on June 30, 2023. [DE 1-1, PageID# 17, ¶ 15]. The FBI executed the search warrant on July 5, 2023, seizing Himes' personal cellphone, laptop, and a 2-terabyte hard drive. [DE 1-1, PageID# 17, ¶ 16]. A forensic examiner performed an on-scene preview of the hard drive, which contained two files that the examiner determined to be CSAM: (1) an image of an adult hand touching an infant male's genitalia; and (2) a screen recording of a Snapchat conversation which showed a user "Davie" sending Himes a video exposing the anus of what the examiner presumed to be a toddler. [DE 1-1, PageID# 17–18, ¶ 17–18]. Both files were last accessed on May 12, 2019. [DE 1-1, PageID# 17–18, ¶ 17–18].

During the detention hearing, the Court heard additional proffer suggesting that the FBI also recovered an iPad while searching Himes' apartment. The iPad contained 28 CSAM images, but the examiner could not determine anything else about the photos because the iPad was installed with a beta iOS software not compatible with the forensic software utilized by the examiner.

## II.   LEGAL FRAMEWORK

Following the preliminary hearing, and after hearing testimony and proffer from all sides regarding the issue of probable cause, the Court found that the United

States had established probable cause for the allegations contained in the Complaint. The charges in the Complaint involve at least one minor victim, meaning that a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") both as to a risk of nonappearance and as to a risk of danger to the community. 18 U.S.C. § 3142(e)(3)(E). Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release

ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.

### III. ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. [DE 5]. Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Himes had overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

#### A. RISK OF NONAPPEARANCE

The Court heard proffer that Himes is a lifelong resident of Kentucky, has no passport, and was compliant with law enforcement during his arrest. While he is currently unemployed, Himes has an apartment that is paid through at least July 2023, and $2,000 in his bank account. The United States did not substantively address or argue Himes was a risk of nonappearance. Thus, the United States has

6

failed to establish by a preponderance of evidence that Himes is a risk of nonappearance, and that the Court is unable to create conditions that would mitigate any risk of nonappearance.

**B.     RISK OF DANGER**

As to the risk of danger, Himes stated that he is not currently a registered sex offender, nor does he have any other criminal history apart from traffic violations. He further suggested that the Court could impose conditions that would mitigate the risk of danger to the community or another person, including restricting all access to electronic devices and ordering him to submit to random searches to ensure compliance with that condition. Himes further stated that there is no evidence that he has had physical contact with minors,[2] but that conditions could be placed to restrict such interactions to mitigate the risk of danger to minors he may encounter. The Court finds that Himes adequately rebutted his presumption as to dangerousness.

Although Himes successfully rebutted the presumption of detention, the foregoing relevant factors under the BRA indicate that the United States has proved by clear and convincing evidence that Himes is a danger to others and the community.

**1.     Nature and Circumstances of the Offense**

The first factor asks the Court to weigh "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor. . . ." 18 U.S.C. § 3142(g)(1). Irrefutably, Himes' alleged crimes involve a

---

[2] During the hearing, Himes described the statements made by imjustdakota to joeresso, insinuating that he had exploited children, as "puffing" statements

7

minor and are consequently crimes of violence. 18 U.S.C. § 3156 (defining "crime of violence" as used in the BRA to include "any felony under chapter . . . 117[.]"). *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001) (recognizing that violations of federal laws designed to protect minors constitute crimes of violence); *United States v. Campbell*, 256 F.3d 381, 397-8 (6th Cir. 2001); *see also United States v. Martinez*, 250 F.3d 1101, 1105 (7th Cir. 2001) (stating "[e]ngaging in sexual intercourse with a thirteen-year-old girl was a 'crime of violence'"); *United States v. Abad*, 350 F.3d 793, 798–99 (8th Cir. 2003) (recognizing that a crime involving a minor victim constitutes a crime of violence).

The allegations against Himes are crimes Congress specifically set apart as so dangerous that they require the presumption of detention. *United States v. Jakits*, No. 23-3011, 2023 U.S. App. LEXIS 12137, at *4 (6th Cir. May 17, 2023) (quoting *Champion*, 248 F.3d at 506) ("Congress applied the presumption to offenses involving minors to emphasize that using children to produce sexually explicit materials 'can result in physical or psychological harm, or both, to the children involved . . . and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.'"). Critically, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986).

8

The United States emphasized that the Kik conversation between Himes and Resso evidences not only Himes' propensity to seek out CSAM but that Himes actively solicited at least one individual to produce CSAM and send it to him. This added layer to Himes' alleged criminality weighs heavily in favor of detention. *See Abad*, 350 F.3d at 797 (observing that "[d]etaining adults who prey on children for the adult's sexual gratification . . . is [ ] a legitimate government objective" justifying pretrial detention).

### 2. Weight of the Evidence of Dangerousness

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight; it is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j).

Given the facts alleged—and their inherent dangerousness—the weight of the evidence of dangerousness is inextricably intertwined with the weight of the evidence as to the crime alleged. Here, there is substantial evidence of Himes' alleged prurient interest in prepubescent children and infants. The Kik conversations between Himes and Resso, again, involve Himes soliciting another adult for nude pictures of an infant, including "live" photos of the minor victim. The conversation also reflects, whether true or mere "puffing," that Himes had exploited at least one child between ages 3 and 7. A preliminary forensic examination of Himes' electronic devices also

9

revealed an image and a video of prepubescent children being sexually exploited. Finally, a preview of Himes' iPad revealed at least 28 other CSAM images.

"[S]exual exploitation of children via the internet, even without physical contact, harms children in real and lasting ways." *United States v. Pece*, No. 1:20-cr-186-1, 2020 U.S. Dist. LEXIS 197356, 2020 WL 6263640, at *5 (N.D. Ohio Oct. 23, 2020); *see also United States v. Fitzhugh*, No. 16-mj-30364, 2016 U.S. Dist. LEXIS 122953, 2016 WL 4727480, at *5 (E.D. Mich. Sept. 12, 2016) (denying revocation of detention order because "*[j]ust one* sexually-related offense against just one minor is enough to imply dangerousness"). Given the weight of the evidence and proffer of Himes' alleged conduct, this factor likewise weighs heavily in favor of detention.

### 3. History and Characteristics of the Person

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the defendant was on probation or parole when he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

Undoubtedly, most of these considerations weigh in Himes' favor, as the United States provided no evidence suggesting that Himes has a criminal history or any other history that would favor detention. Himes stated that he is a lifelong

10

resident of Kentucky, has had stable employment until recently, and has an apartment paid through July 2023. He also emphasized that he was easy for law enforcement to find and was compliant upon being arrested. However, weighing against Himes is his current lack of employment and a dearth of testimony or proffer suggesting he could obtain new employment. Overall, this factor weighs in favor of release.

### 4. Nature and Seriousness of the Danger

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Even where there is no contact with an actual child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims. *See Pece*, 2020 U.S. Dist. LEXIS 197356, 2020 WL 6263640, at *6–7 (recognizing the danger of such images because they "permanently records the victim's abuse, and [their] continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"); *id.* (observing that "possessors of child pornography aid in creating and sustaining a market for such material"); *see also United States v. Kinison*, No. 5:12-CR-57-JBC-REW, 2012 U.S. Dist. LEXIS 136760, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (finding substantial danger risk where evidence demonstrated that the defendant had "a plain, prurient interest in children" and had been handling child exploitation materials). Indeed, "[r]eceipt . . . and possession of child pornography are extremely dangerous to the community, particularly because such activities are often hidden

11

from a defendant's closest friends and family members." *United States v. Tang*, No. 19-cr-00014, 2019 U.S. Dist. LEXIS 98602, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019).

Himes argued that the United States failed to produce evidence that accessed the CSAM in his possession since 2019, and that the United States' failure to prosecute for four years mitigates the purported danger the alleged conduct has to the community. The Court understands Himes' frustration with the dichotomy of delay in prosecution and urgency to seek detention. However, the United States has shown by clear and convincing evidence that Himes possessed CSAM involving multiple prepubescent children, actively solicited the production of CSAM of an infant, and that Himes claimed to have physically abused at least one child to which he had access. The circumstances here compel the Court to conclude that Himes poses an extraordinary danger to minor children.

In sum, the evidence offered by the United States on the above factors weigh in favor of finding that Himes poses a significant danger to the community. On balance, the BRA factors unquestionably favor danger-based detention. The only remaining question is whether the Court can impose release conditions or a combination of release conditions that could sufficiently mitigate Himes' danger to the community.

Courts in the Sixth Circuit have repeatedly noted that prohibiting a defendant's access to the internet while on pretrial release is impractical—if not impossible. *United States v. Hoilman*, No. 22-6108, 2023 U.S. App. LEXIS 9947, WL

12

4074630 at *6 (6th Cir. Apr. 24, 2023) ("The ubiquity of the internet makes it exceedingly difficult to completely prevent someone from accessing it[.]"). *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 U.S. Dist. LEXIS 208955, WL 2447858 at *7 (E.D. Tenn. June 3, 2013) (stating that imposing a third-party custodian, electronic monitoring, and a one-million-dollar bond could not reasonably assure the safety of the community); *United States v. Sammons*, No. 2:19-cr-107, 2020 U.S. Dist. LEXIS 22467, WL 613930 at *18–19 (S.D. Ohio Feb. 10, 2020) (stating "there would be no real mechanism to enforce or police" defendant's promises that he would abstain from using the internet); *United States v. King*, No. 3:22-CR-60-TAV-DCP-1, 2022 U.S. Dist. LEXIS 152150, WL 3645996 at *9 (E.D. Tenn. Aug. 24, 2022) (rejecting defendant's proposition that his wife could reasonably monitor him to ensure he would not access the internet while on release).

"The Court could order forfeiture of all devices, or deny [Himes] all access to the Internet, but there is simply no failsafe way to prevent any and all exposure." *Tang*, 2019 U.S. Dist. LEXIS 98602, WL 2453655, at *11. In sum, Himes' proposed conditions that would impose random home searches and limit his access to the internet and/or electronic devices cannot guarantee his abstinence from using the internet or electronic devices to commit further crimes against children on the internet or in his community.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that the United States failed to prove by a preponderance of evidence that Himes is an irremediable flight risk, but they did prove by clear and convincing evidence that Himes is an irremediable danger

to the community. As such, the Bail Reform Act mandates detention. The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Himes will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Dakota Douglas Himes.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 25th of July, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY